# Pope v. The State.

## Murder.

### (Decided Dec. 21, 1911.  57 South. 245.)

1. *Appeal and Error; Review; Weight of Evidence.*—Where the question of defendant's guilt or innocence is properly submitted to the jury, an appellate court will not determine the question of mere weight of evidence.

2. *Jury; Competency.*—Although a juror admitted that he had heard about the case, and had formed an opinion, yet repeatedly stated that he thought it would have no effect on his verdict, and that the verdict would be governed by the evidence, though he thought it would be somewhat different if he had never heard the case, he was properly pronounced competent, although he also stated that he could not be absolutely sure that what he had heard might not unconsciously have some influence on him.

3. *Trial; Statement of Counsel; Opening Case.*—Where the solicitor opened the case by merely reading the indictment, and in supplementing his formal plea of not guilty, defendant's counsel made a statement to the jury depreciatory of the state's case, indicating that another than defendant would be shown to have been the guilty party, it was not error to permit the state to make a rebuttal statement in reply, outlining what the state expected to prove relative to the defendant's guilt.

4. *Same; Discretion of Court.*—While neither party is required to make a preliminary statement of his case other than by formal pleading, counsel on either side may present to the jury the case as he proposes and expects to present it, and the extent and scope of such statements is ordinarily in the sound discretion of the court.

5. *Evidence; Conclusion; Best Evidence.*—Where a witness testified that he saw certain shoes alleged to belong to defendant a day or two after the murder, his testimony given eighteen months thereafter that he examined the shoes at the coroner's inquest, found them a little damp like they had been washed, specked with what he decided were blood stains, and had the appearance of having been scraped, was not objectionable as a conclusion of the witness or on the grounds that the shoes were the best evidence.

6. *Same.*—Where a witness tracked a wagon and mule from the scene of the murder towards the defendant's house, and in his testimony stated that they left the road, his further statement that the vines growing along the fence were mashed down like something went over the fence, was not objectionable as a conclusion.

7. *Same.*—Where it appeared that at the time of the murder, a defendant was driving a wagon to which was hitched a mule belonging to him but in possession of C. on defendant's place, and a witness testified that tracks traced by him from the scene of the murder to defendant's house, showed that the animal's left hind foot was cupped and that there were two protruding nails on the right hind foot, as shown by their entering on the ground, and that C.'s mule would have made a track with a hollow place on the inside with the left hind foot, the question "would it have made a track that is similar or like the track of the left hind foot of the mule and wagon that you tracked from the alley to defendant's house?" and the answer in the affirmative, was properly admissible.

8. *Same; Tracks.*—While a witness who has examined a track of a defendant may state that it corresponded with the track made by him with which the witness compared it by measurement and certain peculiarities, and also that two tracks measured the same, a witness may not testify that a certain shoe or foot would or could make a particular track.

9. *Same.*—Where the state claimed that at the time of the murder defendant was driving a mule which belonged to him but was in the possession of C. who lived on defendant's place, and an expert blacksmith was permitted to testify that the left hind foot of C.'s mule was cupped, and would make a print similar to those which a witness found leading from the place of the homicide to defendant's house; and defendant claimed that the killing was done by one B. who lived with his mother in a house by the road just where the crime was committed, a question whether B.'s mule could make a track like the witness saw from a certain peachtree to defendant's house, called for the conclusion of such a witness, and there being evidence from which it might be inferred that B. committed the crime, was erroneous and prejudicial to defendant.

10. *Same; Res Gestae.*—Where the defendant claimed that the homicide was committed by one B. who lived with his mother at the point where the killing occurred, evidence that B.'s mother heard a noise and called to him at the time of the homicide, and that he replied, "Don't you hear somebody fighting out there in the road?" was not admissible as part of the res gestae.

11. *Same.*—Time alone is not the determining criterion of the question whether a thing said or done is a part of the res gestae of a given transaction; it must be so connected with the main transaction as to virtually form a part of it entirely excluding all remarks or

[Pope v. The State.]

exclamatory expressions of mere by-standers or onlookers who in no way participate in the transaction.

12. *Same; Prejudice.*—The wrongful admission of evidence of an undisputed fact with which a defendant was in no wise connected, and which adds nothing to the proof of defendant's guilt cannot be said to be prejudicial.

13. *Same; Expert.*—A witness with fifteen year's experience in shoeing horses may properly be permitted to testify as to the condition of a certain mule's right hind foot with which he was familiar, and the liability of a loose nail to drop out.

14. *Trial; Reception of Evidence.*—While the person propounding the question may, on motion, exclude matter not responsive to his inquiry, although competent, the adverse party has no right to object to an answer because not responsive if the matter is competent.

15. *Homicide; Evidence.*—Where a witness testified that he had tracked a wagon and mule from the scene of the homicide to defendant's house, that the tracks left the road and that the vines growing on the fence along the side of the road were mashed down as though something went over the fence, it was proper to permit him to testify that when he was following the track. he had not heard who was accused of the killing.

16. *Same; Articles of Personal Property.*—Where certain articles of property had been taken from decedent's gin house on the night of the murder, evidence of the finding ·of such articles in defendant's back yard several weeks thereafter was admissible.

17. *Same.*—Where neither the fact nor the manner of the killing in question was disputed, the defendant was not prejudiced by the statement that a rock which was picked up near the murdered man's body had a certain substance on it which the witness thought was hair, especially where it did not appear that the rock came from the defendant's premises, nor from his possession.

18. *Charge of Court; Reasonable Doubt.*—A charge asserting that no matter how strong the circumstances might be if they can be reconciled with the theory that some other person may have done the act, the defendant is not guilty, failed to predicate a reasonable theory that someone else did it, and was, therefore, objectionable.

19. *Same; Argumentative Instructions.*—Charges which single out a part of the evidence and which are argumentative may be refused without error.

20. *Same.*—The law does not distinguish between white people and negroes as to their guilt or innocence of crime, and hence, charges which are predicated on such a distinction, or which attempt to draw such a comparison, are properly refused.

21. *Same; Reasonable Doubt.*—A charge asserting that as the case rested entirely on circumstantial evidence, it was the duty of the jury to carefully consider every point material to the state's theory, and if any one of them entertained a reasonable doubt as to the existence of any link in the state's chain of evidence, and that link was necessary to establish the state's theory, they could not find the defendant guilty, was properly refused, since the reasonable doubt which requires a verdict of not guilty should grow out of all the evidence and not from the consideration of a single part or link.

22. *Same; Conformity to Evidence.*—A charge asserting that the state's evidence against the defendant was circumstantial and before the jury could convict the defendant on such testimony, they must believe from the evidence beyond all reasonable doubt, and to a moral certainty that B., a third person, was not guilty of the killing, was properly refused for that notwithstanding there was evidence of B.'s guilt, the jury might also have been convinced beyond a reasonable doubt that defendant participated in the crime.

23. *Appeal and Error; Reversal; Statute.*—Under section 6264, Code 1907, the court must be satisfied that the verdict would not have been different if the error had not been committed, and must consider the entire record, and either affirm or reverse according as it may be satisfied as to the effect on the verdict of the matter complained of.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, Jr.

Ervin Pope was convicted of murder, and he appeals. Reversed and remanded.

For former report of this case, see 168 Ala. 33, 53 South. 292.

The exceptions to evidence are sufficiently set forth in the opinion of the court. The following are the charges refused to plaintiff:

"(1) The court charges the jury that, no matter how strong the circumstances may be, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty.

"(2) The court charges the jury that, no matter how strong the circumstances may be, if they can be reconciled with the theory that some other person may have done the act, they cannot find the defendant guilty.

"(3) The court charges the jury that, if you entertain a reasonable doubt that the shoes offered in evidence were worn by Ervin Pope the night of the homicide, and if you consider this a necessary link in the state's chain of evidence, you cannot find the defendant guilty.

"(4) The court charges the jury that it is the duty of each of you to consider the testimony in this case

with the utmost care, and that when it is necessary, in order to establish the theory of the defendant's guilt, to draw inference from the evidence as to facts not directly proven, that you must not draw that inference and convict this defendant, unless you would draw the same inference and act on it in matters of the greatest concern and importance to your own private affairs.

"(5) I charge you, gentlemen of the jury, that if you believe from the evidence that the thief who robbed McClurkin started when the light was struck, and had time to get past Body's house before McClurkin could have overtaken him, that the defendant is entitled to have you consider this circumstance as showing the improbability of the state's theory that the thief was Ervin Pope, who was overtaken at Body's house.

"(6) The court charges the jury that, in considering any statement made by the defendant at the time of and since his arrest, and claimed by the prosecution to be inconsistent, improbable, and as casting suspicion upon defendant, it is proper that they should take into consideration the weakness of human nature and weakness of the defendant, if such be shown, the excitement and fear operating on him at the time, if such be shown, together with all the circumstances in which he was placed, and determining from the whole evidence the weight or value as evidence you will give to such statement.

"(7) The court charges the jury that in arriving at their verdict in this case they must consider the evidence as fairly and impartially as they would if this were the case of a negro accused of killing a negro, a white man accused of killing a white man, or a white man accused of killing a negro.

"(8) The court charges the jury that there is no evidence in the case that the defendant had not heard

that McClurkin had been killed at the time of his arrest, or at the time he was taken into custody at his house on the morning after the homicide.

"(9) The court charges the jury that the evidence on the part of the state against the defendant is circumstantial, and before you can convict him on such testimony you must believe from the evidence beyond all reasonable doubt, and to a moral certainty, that John Body was not guilty of the killing.

"(10) The court charges the jury that if they would not be willing to act upon the evidence in this case, if it was in relation to matters of the most solemn importance to their own interests, then they must find the defendant not guilty.

"(11) The court charges the jury that, before they can convict the defendant, they must be satisfied to a moral certainty, not only that the proof is consistent with the defendant's guilt, but that it is wholly inconsistent with any other rational conclusion; and, unless the jury are so convinced by the evidence of the defendant's guilt that they would each venture to act upon the decision in matters of the highest importance and concern to his own interests, then they must find the defendant not guilty.

"(12) The court charges the jury that this case rests entirely on circumstantial evidence; that it is their duty to carefully and seriously consider every material point in the state's theory; that if any one of them entertains a reasonable doubt as to the existence of any link in the state's chain of evidence, and that link is a necessary one to the remainder of the state's theory, you cannot find the defendant guilty.

"(13) The court charges the jury that they have a right, in considering the evidence, to take into consideration the traits, characteristics, and peculiarities of the

white and negro race; but, outside of that, they must not let their verdict be influenced in the slightest degree by the fact that the deceased was a white man and the accused a negro.

"(14) The court charges the jury that it is their duty to contrast the manner and demeanor of the witnesses for Pope with the manner and demeanor of the state's witnesses; and you must apply this test, also, to the testimony of Pope as a witness for himself.

"(15) I charge you that it is just as much the duty of a jury to acquit a negro of the charge of killing a white man, if you do not believe from all the evidence that he is guilty beyond a reasonable doubt, as it would be the duty of a jury to acquit a white man of the charge of killing a negro, if the jury did not believe beyond a reasonable doubt that he was guilty.

"(16) The court charges the jury that, if they believe all evidence in the case, they should find the defendant not guilty."

NIEL P. STERNE, for appellant. The evidence is different and weaker than on the former appeal where it was declared that defendant was not entitled to the affirmative charge.—*Pope v. The State,* 33 South. 292. It is insisted that under the evidence in this case that a defendant was entitled to have a verdict directed.—*Green v. The State,* 68 Ala. 539; *Ex parte Riley,* 94 Ala. 84; *State v. Couper,* 39 Pac. 959; 5 S. E. 37. The court erred in refusing to permit the defendant to challenge Stovall for cause.—*King v. The State,* 89 Ala. 146; *Jackson v. The State,* 77 Ala. 18; *Bales v. The State,* 63 Ala. 30; *Carson v. The State,* 50 Ala. 136. The court erred in permitting the solicitor to make the statements complained of in reply to defendant's plea of not guilty.—*Baker v. The State,* 33 N. W. 52; *Ayrult*

*v. Chamberlain,* 33 Barb. 229; *McDonald v. People,* 9 Am. St. Rep. 547. The court erred in permitting the witnesses to state that the shoes had been scraped and washed.—*Reeves v. The State,* 96 Ala. 33; 117 Mass. 122; 103 Mo. 203; 17 Cyc. 26; *Golson v. The State,* 124 Ala. 8. In this connection and on these authorities counsel insist that errors were committed in the admission of other evidence of the same character. The court erred in admitting the conversation between John Body and his mother.—*Pace v. The State,* 162 Ala. 56; *Moore v. N. C. & St. L.,* 132 Ala. 495; *Cooper v. TheState,* 63 Ala. 80; *Stallings v. Henson,* 49 Ala. 92; *So. Ry. Co. v. Reeder,* 152 Ala. 227; 30 S. W. 450; 38 N. E. 454; 19 S. W. 976; 53 Pac. 830. The court erred in permitting it to be shown that the witness did not know who was accused of the crime at the time he was following certain tracks.—*Mobile Co. v. Little,* 108 Ala. 406; *Ellis v. The State,* 105 Ala. 72; *Ball v. Farley,* 81 Ala. 288. The court erred in permitting it to be shown that sorghum seed and peas were found in defendant's back yard several weeks after the killing.—*Schaff v. L. & N.,* 100 Ala. 377; *Bradford v. Haggerty,* 11 Ala. 698; 72 Ill. 625; 53 N. C. 56. The court erred in permitting the witness to state that a certain substance on the rock found was hair.—*Golson v. The State,* 124 Ala. 8; *Decatur Co. v. Mehaffey,* 29 South. 646. Counsel discusses errors assigned as to charges, but without citation of authority. On rehearing counsel insists that there was substantive evidence tending to show Body's guilt, and that the court erred in permitting it to be shown that Body's mule could not have made the tracks testified to, and that the admission of such evidence was prejudicial to the defendant.—*Terry v. The State,* 118 Ala. 86; *Campbell v. The State,* 23 Ala. 69.

[Pope v. The State.]

· R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State. The defendant was not entitled to the affirmative charge.—*Pope v. The State,* 53 South. 292; *Turner v. The State,* 97 Ala. 57. The juror was not subject to challenge for cause.— *Arp v. The State,* 97 Ala. 5; *Hamill v. The State,* 90 Ala. 577. There was no error in permitting the solicitor to make a statement in rebuttal of defendant's statement in opening the case. At any rate it was a matter within the discretion of the trial court, and it does not seem to have been abused.—12 Cyc. 570; 2 Enc. P. & P. 705; *Nicholson v. The State,* 149 Ala. 61. There was no error in admitting evidence as to the condition of the shoes.—*Pope v. The State, supra; Orr v. The State,* 117 Ala. 69. The same is true as to evidence of the tracks made by the mule, etc.—*Watkins v. The State,* 89 Ala. 82. Counsel discuss other assignments of error relative to evidence, but without further citation of authority. The court is never required to charge that there is or not evidence of a particular fact.—*Hill v. The State,* 106 Ala. 3; *Western S. & F. Co. v. Cunningham,* 158 Ala. 369. Charges 4, 10 and 11 were properly refused.—*Rogers v. The State,* 117 Ala. 9. Charges 12, 13, 14, 15, 18 and 19 were mere arguments upon parts of the testimony.—*Austin v. The State,* 145 Ala. 37; *Turner v. The State,* 160 Ala. 40.

SOMERVILLE, J.—This is the second appeal in this case, the first being reported in *Pope v. State,* 168 Ala. 33, 53 South. 292. On the first trial, as on the second, appellant was convicted of murder in the first degree, and sentenced to death. The record presents for review numerous rulings of the trial court, the most important of which are discussed at length in the brief of counsel for appellant. We consider these in the order in which they are presented.

1. The trial court properly refused to give for the defendant the general affirmative charge. We cannot undertake to review the evidence at length in this opinion; but we have examined it with painstaking care, and are satisfied that, taken as a whole, it fairly and reasonably permits of inferences favorable to the guilt of the defendant.—*Toles v. State*, 170 Ala. 99, 54 South. 511; *Turner v. State*, 97 Ala. 57, 12 South. 54.

The insistence of appellant's counsel in this behalf, forceful and earnest as it is, was for the consideration of the jury, and we cannot usurp their functions by here passing upon the mere weight of the evidence they had before them.

2. The juror Stovall, having been examined by the court, was pronounced competent. On cross-examination by defendant's counsel, he admitted that from what he had heard of the case he had "drawed an opinion"; but he repeatedly stated that he thought it would have no effect on his verdict, that he knew he would be governed by the evidence. He said further: "I expect it would be somewhat different if I had never heard of it. It would be according to the evidence given in. I can't say how it would be." And, finally, as to whether he was absolutely certain that what he had heard might not unconsciously have some influence on him, he said, "I couldn't be for sure."

Under the principles fully discussed and laid down in *Long v. State*, 86 Ala. 36, 40, 5 South. 443, this juror was undoubtedly competent. It seems certain from his whole examination that he had no fixed opinion of defendant's guilt which would bias his verdict. It is not necessary to a juror's competency that he shall be able to say that he feels absolutely certain that previous impressions will not unconsciously influence his verdict. This is a purely psychological speculation

which must be deemed foreign to the purposes of the law, which guarantees only approximate and not absolute impartiality in jurors. As said by Chief Justice Marhsall on the trial of Aaron Burr: "Light impressions, which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but those strong and deep impressions, which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him"—cited and approved in *Long v. State*, 86 Ala. 42, 5 South. 447.

In *Long v. State*, the rule on appeal is thus stated: "The reviewing court, therefore, should exercise caution, and the finding of the trial court should not be set aside, unless it affirmatively appears that, on the answers of the juror taken as a whole, he entertained a fixed opinion which would bias his verdict."

The ruling in the case of *King v. State*, 89 Ala. 146, 7 South. 750, cited and relied on by appellant, is by no means in point, as will be seen by an examination of the challenged juror's answers in the report of that case. While, on the other hand, our ruling here is in accord with the ruling in *Hammil v. State*, 90 Ala. 577, 8 South. 380, on substantially the same conditions.

3. In opening, the state's case was presented to the jury by the solicitor by merely reading the indictment. Supplementing his formal plea of not guilty, defendant's counsel made a statement to the jury depreciatory of the state's case, and indicating that another than the defendant would be shown to be guilty. The record does not set out all that counsel said, but recites that he "addressed the jury at some length along the lines indicated." Over the objection of defendant that the

state had no right to go into a rebuttal statement, the court allowed associate counsel for the state to reply to the statement of defendant's counsel by outlining what the state expected to prove relative to defendant's guilt.

:Under the practice prevailing in this state, neither party is required to make any preliminary statement of his case other than by his formal pleadings. But counsel on other side may state to the jury the case as he proposes and expects to present it to them on the evidence.—*Mann v. State,* 134 Ala. 1, 18, 32 South. 704; 12 Cyc. 570, 571. The course followed by the trial court in the present case seems to be identical with that approved in *Mann v. State, supra.* The question raised is one of trial practice merely, and falls within that class of matters the regulation and control of which have always been left to the sound discretion of the trial court; and error cannot be imputed to its action with respect thereto except perhaps in cases of flagrant and prejudicial abuse. Defendant's objection to the reply statement was properly overruled.

4. The testimony of the witness Williams, for the state, that a pair of shoes, alleged to be the defendant's were, when he examined them at the coronor's inquest, a little damp, like they had been washed—specked with what he decided were blood stains—and had the appearance of being scraped, was clearly not subject to the objections interposed; the objection insisted on being that it was but the conclusion of the witness, and the shoes were the best evidence.—*James v. State,* 104 Ala. 20, 16 South. 94. The witness saw the shoes a day or two after the murder, in April, 1909, and his testimony was delivered in October, 1910. It is manifest that the jury could not on this trial judge of physical conditions, necessarily ephemeral in their character, as they existed 18 months before; and that, otherwise than as he

did, the witness could not fairly and adequately inform the jury as to those appearances and conditions. Had the witness been testifying to the instant appearance of the shoes, the objections and arguments in support thereof would be sound and appropriate. These considerations dispose of numerous other assignments of error based on practically identical rulings of the trial court, which we shall therefore not notice in detail.

5. The witness Joe Dodgen, in describing his tracking of a wagon and mule from the scene of the murder towards defendant's house stated that they left the road, and that the vines growing over the fence alongside were mashed down "like something went over the fence." Defendant moved to exclude this statement on the ground that it was a conclusion of the witness. We think the motion was properly overruled.—*Watkins v. State*, 89 Ala. 82, 8 South. 134.

6. This witness was allowed against defendant's objection to state that, when he was following these tracks, he had not then heard who was accused of the killing. This evidence was on the former appeal of this case held to be admissible, but we are now urged to reconsider and reverse that ruling. We have again considered the merit of this evidence, and are still of the opinion that, in view of the peculiar nature of the witness' other testimony, it was a legitimate matter for the consideration of the jury in connection therewith.

7. The theory of the state was that defendant, at the time of the murder, was driving a wagon to which was hitched a mule belonging to defendant, but which was in the possession of Ambrose Curry, who lived on defendant's place. The witness Joe Dodgen had testified that the tracks traced by him from the scene of the crime to defendant's house showed that the animal's

left hind foot was cupped, which he inferred from the shape of the track; and that there were two protuberant nails in the right hind foot, as shown by their imprint on the ground. The witness then stated that he had found a mule whose foot could have made these tracks. This was objected to as not being responsive to the solicitor's question. This objection was not well taken. The interrogator may on motion exclude matter not responsive to his inquiry, even though competent, for the obvious reason that his witness cannot dictate to him what evidence shall be introduced; but, if the evidence is competent, the other party has no right whatever to object to it because not responsive, and if incompetent, the objection should so specify.

8. This witness stated that the Ambrose Curry mule would have made a track with the hollow place on the inside, with the left hind foot. The solicitor then asked him, "Would it have made a track that is similar or like the track of the left hind foot of the mule and wagon that you tracked from the alley to Pope's house?" The witness replied that it would. We think this testimony was admissible, and not subject to the objection that it was the conclusion merely of the witness.

This court has frequently held that a witness should not be allowed to state that a certain shoe or foot could or would make a particular track; that being, it is said, the very fact the jury are to determine.—*Busby v. State*, 77 Ala. 66; *Riley v. State*, 88 Ala. 193, 7 South. 149; Hodge v. State, 97 Ala. 37, 12 South. 164, 38 Am. St. Rep. 145.

It has also been held that a witness should not be allowed to state that two particular tracks are the same.—*Terry v. State*, 118 Ala. 79, 84, 23 South. 776. But, on the other hand, it has been held that a witness who had examined the alleged track of the defendant

[Pope v. The State.]

could state that it "corresponded" with a track made by him next day, with which the witness compared it, "by measurement, and certain marked peculiarities.- *Busby v. State,* 77 Ala. 66. And also that two tracks "measured the same."—*Gilmore v. State,* 99 Ala. 154, 159, 13 South. 536. While, in another case, it was ruled that the witness could not state that particular tracks "correspond with the track of defendant."—*Livingston v. State,* 105 Ala. 127, 16 South. 801.

In *James v. State,* 104 Ala. 20, 22, 16 South. 94, the witness had described the physical peculiarities of the defendant's tracks. He was then asked, "What was the *similarity* between the tracks at the forks of the road and the seed room door?" Objection that this called for the witness' opinion was overruled, and the witness stated that the peculiarities of the tracks at the two places were "the same." The question and answer were held to be competent.

In an attempt to harmonize the *James Case* with the ruling in *Terry v. State,* 118 Ala. 85, 23 South. 776, the writer of the opinion in the latter case palpably misinterpreted the facts upon which the ruling in the *James Case* was founded.

A consideration of the foregoing cases, to say nothing of those in other jurisdictions, would seem to justify the observations of Mr. Wigmore: "The opinion rule day by day exhibits its unpractical subtlety and its useless refinements of logic. Under this rule we accomplish little by enforcing it, and we should do no harm if we dispensed with it. * * * We should do no harm, because, even when the final opinion or inference is admitted, the inference amounts in force usually to nothing unless it appears to be solidly based on satisfactory data, the existence and quality of which we can always bring out, if desirable, on cross-examination."

And. he. concludes: "Add, finally, the utter impossibil: ity of a consistent application of the rule, and the consequent uncertainty of the law, and we understand how much more it makes for injustice rather than justice. It has done more than any one rule of procedure to reduce our litigation towards a legalized system of gambling."—3 Wigmore on Evidence, § 1929.

We do not mean, however, to overturn the general principles of the opinion rule as established by the decisions of this court. But we think the spirit of the rule is not violated by the shorthand statement of similarity here made by this witness, in connection with the marked peculiarities stated by him, subject as it was to cross-examination by defendant.—*Fuller v. State,* 117 Ala. 36, 23 South. 688. And we are unwilling to embarrass trial courts by any further extension of the rule of exclusion, at least as a basis for the reversal of judgments on appeal.

DOWDELL, C. J., and SIMPSON and MCCLELLAN, JJ., concur in this conclusion; while ANDERSON, MAYFIELD, and SAYRE, JJ., dissent, holding that the admission of this evidence was error for which the judgment of conviction should be reversed.

9. Several questions were asked this same witness, who was a practical blacksmith with 15 years' experience in shoeing horses, relative to the condition of the Curry mule's right hind foot, and the liability of a loose nail to drop out. He being an expert in this line, the answers of the witness were clearly competent, and their admission was not error.

10. It was the theory of defendant's counsel that the murder was committed by John Body, a negro who lived with his mother, Nett Body, in the house by the road just at the point where the crime occurred. Presumably to weaken this argument, the solicitor asked the same

witness, "Could the John Body mule make the track that you saw from that peach tree to Ervin Pope's house?" Over defendant's objection that this called for a conclusion of the witness, he was allowed to answer, "No."

Under the authorities above cited, this objection was well taken, and the admission of the witness' answer was manifest error.

Section 6264, Code 1907, declares that "the judgment of conviction must not be reversed because of error in the record, when the court is satisfied that no injury resulted therefrom to the defendant." This language has been construed to mean that the court must be satisfied that the verdict of the jury would not have been different if the error had not been committed.—*Dennis v. State*, 118 Ala. 79, 23 South. 1004.

It is therefore mandatory upon us to consider the entire record and reverse or affirm on this ruling according as we may be satisfied as to its injurious or non-injurious effect upon the jury's verdict. And, in doing this, we are to be governed by practical considerations of reason and common sense, rather than by the unsubstantial apprehensions that formerly found expression in the rule of reversal in every case for any error apparent in the record; while, at the same time, the just rights of defendants must be carefully guarded, and substantial doubts resolved in their favor.

We have sifted the evidence with care, and find no facts from which the jury could have drawn an inference that John Body committed the murder, or shared in its commission. While it is true that the proximity of the accused to the scene of the crime at an unreasonable hour has been held to be an incriminating circumstance (*Ross v. State*, 74 Ala. 532; *Lindsey v. State*, 170 Ala. 80, 54 South. 516), the mere fact that the crime oc-

curred on the highway near the home of the accused cannot by itself yield any inference of his guilt.

Nor does the theory find any support in the fact that the subpœna issued for Body was returned with the indorsement, "Not found," 18 months after the date of the crime. This does not show flight by Body; and, if it could be so interpreted, even his flight is not a circumstance available to this defendant.—*Levison v. State,* 54 Ala. 520; *Kemp v. State,* 89 Ala. 52, 7 South. 413.

We are therefore fully satisfied that the attempted exculpation of Body's mule, whether by legal or illegal evidence being merely irrelevant, could not have influenced the verdict of the jury unfavorably to the defendant, since they could not, on the evidence, have imputed guilt to Body; and the error complained of cannot avail for a reversal of the judgment of conviction.

11. Nett Body, the mother of John Body, testified that she and John were in his house, where she also lived, on the night of the murder, and that, hearing a noise, she called out to him. Over defendant's objection, she was then allowed to state that he replied, "Don't you hear somebody fighting out there in the road?" This statement by John Body was clearly not admissible as a part of the res gestæ of the murder going on outside, and was obnoxious to the hearsay rule.

Time alone is not a determining criterion when the question is whether a thing said or done is a part of a given transaction.—*Domingus v. State,* 94 Ala. 9, 11 South. 190. It must be so connected with the main transaction as to virtually form a part of it.—*A. G. S. R. Co. v. Hawk,* 72 Ala. 112, 47 Am. Rep. 403.

The unanimous opinion of courts, as well as commentators, is that the remarks or exclamations of mere bystanders or lookers on, who in no way participate in

[Pope v. The State.]

.the transaction, are not admissible in evidence under the res gestæ doctrine.—*Flynn v. State,* 43 Ark. 289; *Wilkins v. Ferrell,* 10 Tex. Civ. App. 231, 30 S. W. 450; *State v. Riley,* 42 La. Ann. 995, 8 South. 470; *State v. Oliver,* 39 La. Ann. 470, 2 South. 194; *Butler v. M. Ry.,* 143 N. Y. 417, 38 N. E. 454, 26 L. R. A. 46, 42 Am. St. .Rep. 738; *Ganaway v. S. L. D. Ass'n,* 17 Utah, 37, 53 Pac. 830; *Carr v. State,* 76 Ga. 592; *Leahey v. Cass Ry. Co.,* 97 Mo. 165, 10 S. W. 58, 10 Am. St. Rep. 300; *Chicago Ry. Co. v. Cummins,* 24 Ind. App. 192, 53 N. E. .1026; Wharton on Crim. Law, §§ 262, 263; 1 Bish. Crim. Ev. § 1087.

But, although erroneous, the admission of Body's statement was absolutely without prejudice to the defendant. It merely referred to an undisputed fact, and in .no possible way suggested defendant's connection therewith. If it be urged that its purpose was to show that Body was in the house while the crime was being committed outside, the answer is that the witness had already testified, without objection, that he was in the house with her at the time. Moreover, in any aspect, even if it tended independently to exculpate Body, for the reasons set forth in the paragraph above, it added nothing to the proof of defendant's guilt, and in no way weakened the inference of his innocence. We therefore hold that he cannot complain of its admission.

12. There was no error in allowing witnesses to testify to their finding of sorghum seed and peas in defendant's back yard several weeks after the burglary and murder. Such articles had been taken from McClurkin's ginhouse on the night of the murder, and the fact that some weeks had elapsed was but a circumstance for the jury to consider in estimating the probative value of the discovery. The fact was none the less relevant.

13. The witness Norton was allowed, against defendant's objection, to state that a certain substance pointed to on a rock picked up near the murdered man's body, was hair; the rock itself being in evidence. It may be conceded that whether or not the rock had hair upon it should have properly been left to the jury. But it is difficult to understand what this had to do with the guilt or innocence of defendant, or in what way it could have prejudiced him.

Neither the fact nor the manner of the killing was in dispute, and this rock did not come from defendant's possession, nor from his premises. If the statement was improperly admitted, its admission was harmless, and defendant cannot complain of it.

14. We have examined and considered all the other rulings of the trial court on the admission of evidence, and find no errors with respect thereto.

15. Charges 1 and 2 are bad, because they do not predicate a reasonable theory of some other person's guilt.

Charges 3, 5, 6, 8, 13, and 14, because they single out evidence, and are also argumentative.

Charges 4, 10, and 11, because they are argumentative and misleading.

Charges 7 and 15, because the law does not distinguish between white people and negroes, so far as their guilt or innocence of crime is concerned, and because they are argumentative.

Charge 12, because the reasonable doubt which requires a verdict of not guilty should grow out of the whole evidence, and not from consideration of a single link or part.

Charge 9 is bad because, for the reasons set out in paragraph 10, above, there was no evidence to support it, and it was wholly abstract. It is bad, also, even if

there was evidence of Body's guilt, because the evidence against defendant may nevertheless have been sufficiently strong to convince the jury of his participation in the crime, and to produce the inference of collusion.

It results that the judgment of the trial court must be affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON, and McCLELLAN, JJ., concur. ANDERSON, MAYFIELD, and SAYRE, JJ., dissent on the single point indicated in the opinion, as to which they hold there was error for which the judgment should be reversed.

ANDERSON, J.— (dissenting).—The witness Dodgen, after testifying to certain tracks seen in the road, and after describing the foot of a certain mule belonging to the defendant, was permitted, over the objection of the defendant, to testify that this foot would make a track similar to the one he saw in the road. He did not see the mule make a track and could not, therefore, testify as to the correspondence of tracks, if this would be permissible, and his evidence was simply his opinion that the foot examined by him would make a track similar to the one he saw in the road. He could and did describe the track he found in the road, also the condition of the mule's foot, and it was for the jury to determine whether or not the mule examined would make a track like or similar to the one found in the road. This evidence is directly opposed to the cases of *Busby v. State*, 77 Ala. 66; *Livingston v. State*, 105 Ala. 127, 16 South. 801; *Hodge v. State*, 97 Ala. 40, 12 South. 164, 38 Am. St. Rep. 145; *Riley v. State*, 88 Ala. 193, 7 South. 149; *Young v. State*, 68 Ala. 569. I think the trial court erred in not excluding this evidence. Nor

am I willing to hold that it was error without injury, as the case was one of circumstantial evidence, and the connection of the defendant with the mule track found in the road, was a most material and important factor, and the opinion of this witness Dodgen, that the mule's foot would make a track similar to the one found in the road, could be, and doubtless was, a most effective weapon to be used both in the argument of counsel and by a juror to bring doubtful members over to a conviction.

MAYFIELD and SAYRE, JJ., join in this dissent.

## On Rehearing.

SOMERVILLE, J.—As appears from the original opinion, the court unanimously held that the admission of certain testimony, which was admitted against defendant's objection, and which tended strongly and pointedly to show that John Body was not the person who murdered McClurkin, was erroneous as a matter of law. The theory of the defense was and is that Body, and not the defendant, committed the murder. We were then of the opinion that there was no substantial evidence that had any tendency to implicate Body, and that the theory of his guilt did not rise above the dignity of mere suspicion; and hence our conclusion that the erroneous admission of testimony in exculpation of Body could have had no material influence upon the verdict of the jury, and was therefore not prejudicial to the defendant.

The evidence against the defendant was entirely circumstantial, and in many respects unusual and peculiar. As usual in such cases, it took a wide range, and included many minute circumstances. We have reconsidered the whole evidence with a special view to its

tendencies with respect to the possible responsibility of Body for the crime charged against the defendant; and, in the light of this examination, we are now all of the opinion that the composite effect of all the circumstances shown in evidence might have led the jury, by deductions not strained nor irrational, to impute the commission of the crime to Body. As said by Chilton, J., in *Campbell v. State*, 23 Ala. 69: "Circumstances may be minute, and, considered separately, of very little importance, shedding but a dim ray of light upon the transaction sought to be elucidated; yet, when grouped together and considered in the aggregate, they may constitute a chain of evidence which draws the mind to a very satisfactory conclusion."

The result is that we are now unable to declare that we are satisfied that the erroneous admission of the evidence referred to did not materially influence the verdict of the jury adversely to the defendant.

The application for rehearing is granted, the judgment of affirmance set aside, the judgment of the trial court reversed, and the cause remanded for another trial. All the Justices concur, except DOWDELL, C. J., not sitting.