# Pope *v.* The State.

## *Murder.*

(Decided June 30, 1913.   63 South. 71.)

1. *Evidence; At Former Trial; Absent Witness.*—Inability to find a witness and produce him at the trial is a sufficient predicate for the admission of his testimony given at a former trial, although it is not affirmatively shown that he is dead, insane or out of the jurisdiction of the court.

2. *Same.*—The predicate examined and held sufficient to show that a witness could not be found by the exercise of due diligence and hence, sufficient as a predicate for the introduction of his evidence, given on a formel trial.

3. *Same.*—Where there is no evidence that the witness ever resided or remained in any other county than that of the county of the trial, and that a subpoena to any other county would procure his attendance, due diligence does not require the issuance of subpoenas to other counties.

(McClellan and Somerville, JJ., dissent.)

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Erwin Pope was convicted of murder in the first degree, sentenced to be hanged and he appeals.   Reversed and remanded.

THOMAS J. HARRIS, for appellant.   No brief reached the Reporter.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

SAYRE, J.—The law of this case on all questions, of any consequence, with one exception which will be specially noticed, has been thoroughly threshed out on former appeals, and settled to our satisfaction.—*Pope v. State,* 174 Ala. 63, 57 South. 245; *Id.,* 168 Ala. 33,

53 South. 292.  On the last trial the court below follow-
ed the previous rulings of this court, and this appeal
does not require that anything more be said as to them.

At the trial now under review the defendant "offered
to prove by T. C. Sensabaugh the testimony of John
Body sworn to at the first trial of this case, the testi-
mony offered being as follows," and here follows in the
bill of exceptions a statement of the proposed testi-
mony.  The objection interposed to this testimony of
the absent witness by the state's solicitor was that "it
was not properly predicated, that it was not shown that
Body was dead or had removed from the state."  The
court sustained this objection, and the defendant duly
excepted.

It must be conceded that evidence of what a witness
has sworn on a former trial, where there was opportu-
nity for cross-examination, should be received, when it
appears that the personal attendance of the witness is
unobtainable, though it cannot be shown affirmatively
that the absent witness is either dead, insane, or beyond
the jurisdiction of the court.  If, for example, it be
shown that the whereabouts of the witness is unknown
after diligent search, the reason of the rule for this ex-
ceptional sort of evidence, which is to avoid a failure of
justice (*Marler v. State,* 67 Ala. 55, 42 Am. Rep. 95)
obtains and holds good in such a case.  There are pre-
cedents to the contrary in some other states; but the
better and more general opinion is that inability to find
a witness is a sufficient reason for his nonproduction.
—1 Greenl. Ev. (16th Ed.) § 163g, p. 284.  This court
in a number of cases has expressed its favor to the ad-
missibility of secondary evidence in such circumstances,
and it may now be said to be well settled in this state.—
*Lowe v. State,* 86 Ala. 52, 5 South. 435; *Thompson v.
State,* 106 Ala. 74, 17 South. 512; *Burton v. State,* 107

Ala. 68, 18 South. 240; *Mitchell v. State,* 114 Ala. 1, 22 South. 71; *Burton v. State,* 115 Ala. 1, 22 South. 585; *Lett v. State,* 124 Ala. 64, 27 South. 256; *Percy v. State,* 125 Ala. 52, 27 South. 844. But, testimony of this character being admitted from necessity and by way of exception to the general rule of the law, the party offering it assumes the burden of showing to the court that he has exercised due diligence to find the witness.

The objection taken in the court below called attention to one defect only in the predicate laid, to wit: That the proof of Body's death or absence from the state was insufficient, whereas defendant's effort was to show that the witness could not be found, whether dead or alive, whether within or without the state. The question whether the witness could not be found after due diligence was preliminary to the introduction of the proposed testimony, and in the court below was addressed to the judgment of the presiding judge. Here the question is whether, after making proper allowance for the finding below, it sufficiently appears that the whereabouts of Body was unknown, and his testimony at first hand unobtainable by due diligence. If so, he was dead for the purposes of evidence, and secondary proof of his testimony should have been received.

The case presented to the trial court was as follows: It appeared that the absent witness, Body, had lived in Calhoun county for nine or ten years at least. McClurkin was killed in the road immediately in front of the house where the witness lived. There were circumstances which pointed right strongly to his participation in the crime. The defendant had contended all along that Body alone was the guilty agent, and when this case was last here we said on rehearing and after great deliberation: "We have reconsidered the whole evidence with a special view to its tendencies with re-

spect to the possible responsibility of Body for the crime charged against defendant, and, in the light of this examination, we are now all of the opinion that the composite effect of all the circumstances shown in evidence might have led the jury, by deductions not strained nor irrational, to impute the commission of the crime to Body." Subpœnas for Body had been issued at various times, and had been returned "not found." It is a fair presumption that these subpœnas had been issued for service by the sheriff of Calhoun county alone. And, for aught appearing, they may have issued at the instance of the state—probably did, for while the testimony which defendant offered to reproduce was of such character as to create the impression that Body knew more of the crime than he was telling, and while at one point at least it tended to break the chain of circumstances which the state had woven about defendant, yet Body's testimony, if worthy of belief, may on the whole have weighed heavily against the defendant, and the indications of the record are that on the first trial he was used as a witness for the state. However these things may be, the credibility and effect of the proposed testimony was a matter to be determined by the jury alone. As affecting its competency, we observe that there was no evidence going to show that the witness had ever resided, stopped, or had occasion to stop, in any other county; none to show a likelihood of his presence in any other county at the time of the trial or just prior thereto; none to show a probability that subpœnas to other coutines would have been of any avail, and hence no duty of diligence resting on defendant to procure the issuance of writs to other counties.—*Jacobi v. State,* 133 Ala. 1, 32 South. 158.

In connection with the case thus shown it must be considered that witnesses brought by the prosecution

testified as follows: G. A. Braswell: "I have not seen John Body since he was here in court at the first trial of this case. He had started a crop there on my place. After the killing he did not do any more work on the crop. He left, and I have not seen nor heard from him since." Joe Dodgen, a blacksmith: "I have not seen John Body about Oxford since the first trial of this case —except just after the first trial. The first trial was nearly four years ago. I have not seen him since that time. I used to do his work. I have not done any work for him in four years." J. L. Murphy: "Body was here until the first trial. He was kept in jail until the trial. I have not seen him since then. It must be a fact that he has left." Nett Body: "I am the mother of John Body. John is not in this state now as I knows of. I have not seen John nor heard from him since that first year. I have not had any letters from him in the last year or two. I do not know where he is now. John was arrested the morning the body was found. They kept him in jail until after the first trial. He stayed at home just a few days after he was turned out. I had one letter from him after he left here. I do not know where that letter was writen from." Dan Hall, a near neighbor: "I do not know where Body is now."

Upon consideration of the case thus shown we are clear to the conclusion that the witness John Body had gone to parts unknown; that no degree of diligence which might in reason have been required of defendant or his counsel would have availed to discover the whereabouts of the witness; that he had gone permanently, or his return was highly improbable; and that in consequence, under the rule heretofore declared by this court for the governance of such cases, the evidence of what the absent witness swore at the first trial should have been received.

[Goforth v. The State.]

For the error shown in rejecting this testimony the judgment must be reversed, and the cause remanded for another trial, pending which the defendant will be held.

Reversed and remanded. All the Justices concur, except McClellan and Somerville, JJ., dissenting.