# Pope *v.* The State.

## *Murder.*

(Decided June 30, 1914. 66 South. 25.)

1. *Homicide; Degree; Jury Question.*—Where there was evidence from which a rational mind could infer that defendant was guilty of murder in the first degree, it became a question for the jury to determine the degree of guilt, and not a question for the trial court.

2. *Same; Evidence.*—Where the murder was alleged to have followed the burglarizing of a gin house of deceased, evidence that sorghum seed and peas similar to that alleged to have been stolen from the gin house of deceased were found under a pile of lumber several hundred yards from defendant's house was properly admitted, notwithstanding the lumber was located on land which did not belong to defendant, but was piled there by defendant with the consent of the owner, there being other evidence connecting defendant with the crime.

3. *Same.*—Where the murder was alleged to have been committed by beating deceased over the head, evidence that, on the day after the homicide, a pair of shoes, alleged to have belonged to defendant, and having blood and flesh on them, were found under a house on defendant's premises, was admissible.

4. *Same.*—Where it appeared that defendant went to the mill of deceased on the afternoon before the commission of the crime for the ostensible purpose of having his corn ground into meal, the state claiming that his purpose was to examine the premises preliminary to burglarizing them, evidence that he told a simple minded boy who slept in the mill that he ought not to sleep in the millhouse, and that a snake might bite him there, was admissible.

5. *Same.*—Where the evidence of the identity of the person committing the murder was circumstantial and tended to show that the crime was committed either by defendant or by a certain other person, evidence that such other person was in his room and could not possibly have been at the scene of the crime, was properly admitted.

6. *Same.*—The testimony of the mother of a person who had been suspected of committing the crime with which defendant was charged, that such other person was in his room and not at the scene of the crime, was properly admitted, notwithstanding that at the time she gave such testimony her son was in jail charged with the crime, as this fact merely affected the value of her testimony.

7. *Same.*—The fact that relevant evidence is inconclusive is not ground for excluding it in a murder case or other criminal prosecution.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

[Pope v. The State.]

Ervin Pope was convicted of murder in the first degree, and he appeals.   Affirmed.

THOMAS J. HARRIS, E. D. WILLETT and F. D. PEEPLES, for appellant.   Counsel discuss the various errors assigned in the light of the opinions rendered on the former appeals in this case with the insistence that prejudicial error intervened.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State.   On the authority of the former appeals in this case the judgment of conviction should be affirmed.

DE GRAFFENRIED, J.—This is the fifth appeal in this case.   After a thorough consideration of the evidence, this court, on the first appeal, declared that the evidence in the case fairly and reasonably permitted inferences favorable to the guilt of the defendant, and for that reason that the trial court was not authorized, under the law, to give to the jury affirmative instructions on behalf of the defendant.   The records which have, on the various appeals, been brought to this court have, perhaps, given to this court a peculiarly familiar acquaintance with each piece of the testimony in the case which reasonably permits of inferences favorable to the guilt ·of the defendant, and have also given to the court a peculiar and intimate acquaintance with each question of law which can under the evidence, in any way, be invoked on behalf of the defendant.

The defendant in this case has again by the verdict of a jury been adjudged guilty of murder in the first degree, and has again been sentenced to death.   Out of respect to our duty under the law, we have, with a full knowledge of the gravity of the situation, again carefully examined all the evidence in this case, and, after

having done so, we can find no reason why we should change our announcement, made upon the first appeal, that in our opinion, under all the evidence, the question as to whether the defendant is or is not guilty of murder in the first degree is a question of fact for the determination of a jury and not a question of law for the determination of a court.—*Pope v. State,* 168 Ala. 33, 53 South. 292; *Pope v. State,* 174 Ala. 63, 57 South. 245; *Pope v. State,* 181 Ala. 19, 61 South. 264; *Pope v. State,* 183 Ala. 61, 63 South. 71. We do not Pilate-like wash our hands of a matter which is within our lawful control. We simply declare that in this case there was evidence upon which, if believed, a rational mind could legally infer the guilt of the defendant of murder in the first degree, and that therefore it was for the jury, and not for the trial court, to say whether or not the defendant was guilty.

2. There is nothing in the contention of defendant that witnesses should not have been allowed to testify to the finding of sorghum seed and peas under a pile of lumber which was across a railroad from the defendant's house and several hundred yards from his house. The opinion rendered on the second appeal indicates that this lumber was in the defendant's back yard.— *Pope v. State,* 174 Ala. 63, 57 South. 245.

The record on this appeal shows that the lumber was not in the defendant's back yard, but that it was located as above stated and on lands not belonging to the defendant. The record on this appeal, however, shows that the defendant was near this pile of lumber at the time of his arrest; that the lumber belonged to the defendant; and that the lumber was, and had been for a considerable period, kept by the defendant at the place where it was piled with the consent, express or implied, of the owner of the lands upon which it was piled.

We think that it is clearly inferable from the evidence that the man who burglarized the ginhouse of the deceased was the man who committed the murder. We also think that it is clearly inferable from the evidence that the burglar drove to and from the scene of the burglary in a one horse vehicle. It is also legally inferable from the evidence that the one horse vehicle was, on the named occasion, drawn by a mule which belonged to the defendant, and which, at the time referred to, was kept on a farm of the defendant, and which farm was about 2½ miles from the house in which the defendant lived. It is also inferable from the evidence that after the homicide the murderer drove this wagon drawn by this mule from the scene of the homicide to or near to the house of the defendant.

The deceased was beaten to death by blows upon the head, and some of the blunt instruments used in the perpetration of the murder had blood, human cuticle, and hair upon them. As bearing upon the question as to whether the defendant was guilty of the murder, it was therefore competent for the state to show that, on the day after the homicide, a pair of shoes, with evidences of blood and flesh upon them (shoes which some of the evidence tended to show were shoes of the defendant), were found secreted under a house upon the defendant's premises, and that, even six weeks afterwards, sorghum seed and peas in a sprouting condition (as sorghum seed and peas similar to those found under the lumber pile were stolen from the ginhouse when it was burglarized) were found secreted under the lumber pile.

Whenever evidence is relevant, no matter how inconclusive it may be, a trial court cannot be put in error for admitting it.—*Pope v. State,* 174 Ala. 63, 57 South. 245.

3. It seems from the record now before us that McClurkin, the deceased, owned a water mill which was

situated a short distance from his cotton gin. Both the water mill and the cotton gin were operated by McClurkin for the public. McClurkin's residence was about 200 yards from the water mill, and was a little less than that distance from the cotton gin. It also seems that a colored boy, of but little wit, was accustomed to sleep in the water mill. The murder was committed on Monday night, and on the afternoon of that day the defendant went to the water mill with corn and came back with meal. The theory of the state is that, while the defendant went to the mill for the ostensible purpose of having corn ground into meal, his real purpose in going there was to make an examination of the premises for the purpose of later burglarizing them.

While on the premises on Monday afternoon, the defendant was informed that the negro boy who slept in the mill had killed a rattlesnake. Against the objection of the defendant, the state was permitted to prove that, while the defendant was at or near the mill on Monday afternoon, he told the boy who slept in the mill that he "ought not to sleep in the millhouse," saying, at the same time, that a "snake might bite him in the millhouse." This testimony, upon all the previous appeals in this case, has been held to be relevant. If, when the defendant had the conversation with the boy who slept in the mill, he intended to burglarize the ginhouse, it is not unnatural that he would have preferred, that, when the burglary was committed, no one should be in the mill. It may be that on the previous appeals the records may not have disclosed that the mill and the gin were not in the same building, but, if so, that fact cannot affect the relevancy of the evidence, although it may affect its probative force. The man who burglarized the ginhouse did so for the purpose of stealing sorghum seed and cotton seed therefrom. He went there with a wagon

in order that he might take away the fruits of his bur-
glary. If the defendant, when he was, on Monday after-
noon, on McClurkin's premises, made up his mind to
come back there that night, break open the ginhouse and
carry away, in a wagon, a lot of sorghum seed and cot-
ton seed, then it is at least inferable that he preferred
that no one should, on that night, be in the millhouse,
a place in ordinary hearing distance. A jury might in-
fer that the defendant thought that this conversation
with this ignorant negro-boy of but little wit was cal-
culated to scare him away from the mill that night and
thus relieve the contemplated crime of one possible
source of discovery. Upon this ground we think that
this evidence, however, slight its probative force, was
relevant. If the mill had not been in the immediate
neighborhood of the ginhouse—if it had been so situated
that an occupant of the mill would have been altogether
unlikely to have discovered the crime or its perpetrator
—then the evidence would have been irrelevant.

The fact that McClurkin and the members of his
household slept in a residence which was in hearing dis-
tance of the ginhouse does not affect the relevancy of the
above testimony. With no one in the mill, chances of
discovery of the contemplated burglary, if one was con-
templated, were less than if both the mill and the resi-
dence were occupied by human beings. Where evidence
is pertinent, although it may be, considered alone, weak
and inconclusive, it is competent.—*Alsabrooks, et al. v.
State,* 52 Ala. 24.

4. During the progress of the trial, certain excep-
tions were reserved by the defendant to portions of the
testimony of a witness Nett Body.

There are, as has been said by this court in its previ-
ous discussions of this case, two theories relative to this
murder. One theory is that John Body committed the

murder. McClurkin came to his death very close to John Body's house, and one of the instruments probably used by the murderer in committing the murder was a piece of wood from John Body's woodpile. The evidence of Nett Body, fairly and dispassionately construed, tended to show that, at the time the murder was committed—during the period when the murderer was beating McClurkin to death—John Body was in his room in his house. The evidence tending to show the defendant's guilt was circumstantial. Some of these circumstances were minute and, considered alone, are of little force as evidence. The evidence which tends to show the guilt of Body is also circumstantial. If Body, and not the defendant, is the murderer, circumstances alone tend to establish his guilt. One thing is certain, if Body was in his room at the time McClurkin was murdered, then Body did not strike the blows which caused his death. If Body was in his room at the time indicated, a serious blow is given to the theory of the defendant, and necessarily the theory of the state is correspondingly strengthened. In our opinion, therefore, the evidence of Nett Body, to which the defendant objected, was relevant.

It is true that Nett Body is John Body's mother. It is also true that, when she first testified in the case, John Body was then in jail charged with McClurkin's murder. These facts affect, not the relevancy, but only the value, of Nett Body's testimony.

5. We have above considered all the questions which counsel for the defendant have, in their brief, called to our attention. A careful examination of the record indicates that they have in their briefs directed our attention to every question presented by the record which calls for discussion at our hands. The record fails to show reversible error, and as this case presented, under

[Ex Parte Phillips, in re. Phillips v. The State.]

all the evidence, a case for the determination of a jury, we are helpless to furnish the defendant with another trial. Five juries, in five successive trials, have found the defendant guilty of murder in the first degree, and in each instance the death penalty has been imposed upon the defendant. The last trial, the one from which this appeal was prosecuted, was free from reversible error. The judgment of the trial court sentencing the defendant to death must therefore be affirmed.

Affirmed. All the Justices concur.