LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence on a trial by jury on an indictment charging defendant with making a sale of marijuana, for which she was sentenced by the court to imprisonment for fifteen years.
No issue is presented on appeal as to the sufficiency of the evidence to support the verdict and judgment of conviction. There is no good purpose, therefore, in our summarizing the evidence in general, and our references to the evidence will be limited to those pertinent to any of the four issues presented in appellant’s brief, which we now consider in the order of their presentation.
I.
Appellant states that it was “error for the trial court to allow the State to argue first and last on opening statements.” The issue is directed at that which is shown by the following portion of the court reporter’s transcript just after State’s attorney had made an opening statement to the jury and defendant’s attorney followed with an opening statement to the jury:
“MR. WILKES [State’s Attorney]: Judge, could I make one comment to the jury?
“THE COURT: Uh-huh.
“MR. LANE [Defendant’s Attorney]: Well, I would object to that, Judge. He’s already had a chance to make opening argument.
“THE COURT: He’s got the right in opening arguments to open and close, as well as in closing arguments.
“MR. LANE: Well, I just note my objection in the record to that. He’s already given his opening argument and I have given mine.
*876 “THE COURT: Sure.
“(Thereupon, the following occurred in the presence and hearing of the jury:) “MR. WILKES: Judge, I just want to make one final statement to the jury before we start.
“Normally, when we present a case to a jury, we try to go in a chronological and orderly fashion. In this particular case, we can’t do that. The last witness in the case, the employee of the Department of Forensic Science, who would normally testify last about the vegetable matter, he needs to be in Selma at 1:00 o’clock— “MR. LANE: Judge, I’m going to object. They can just call their witnesses as they see fit.—
“MR. WILKES: I would just like to explain—
“MR. LANE: We are getting undue, you know undue sympathy for a witness and the lawyers will work with the court. He doesn’t need to make a big speech about where they—
“THE COURT: Sustain the objection. They understand, I think.
“MR. WILKES: We just want to call a witness out of order, just to accommodate him so he can be in a trial in Selma.
“MR. LANE: We have no objection to that.
“THE COURT: You may do so.”
Notwithstanding our reservation as to whether defendant preserved on the trial the particular issue presented on appeal, we determine that the issue is not well taken. Appellant cites in support of his contention, Rule 19.1, Proposed Alabama Rules of Criminal Procedure (Advisory Committee Draft, 1977), which was not in effect on the date of appellant’s trial, but even if it were, it would not constitute authority in support of appellant’s contention, for that Proposed Rule 19.1(a)(4) would provide that “the District Attorney may be permitted a brief statement in rebuttal in the court’s discretion.” The law that controls as to the particular point is set forth in Pope v. State, 174 Ala. 63, 57 So. 245, 249 (1911), in which the right of the prosecuting attorney to make a brief reply to the opening statement of counsel for the defendant was upheld. As is to be noted from the above-quoted portion of the transcript as to what occurred as the attorneys were making their opening statements to the jury, the statement made by the attorney for the State was not in reply to or rebuttal of the statement made by defendant’s attorney, but it was an explanation for his calling the first witness for the State out of the regular order that a practicing attorney would ordinarily take in presenting his side of the case. Probably it would have been better for the prosecuting attorney not to have attempted such explanation. The trial judge evidently thought so in sustaining defendant’s objection to the attempted extended explanation. In our opinion, there was no prejudice to the defendant and the trial court committed no error in ruling as it did as challenged by the first issue presented by appellant.
II.
By the second issue presented by appellant, her attorney contends that it was prejudicial error to allow testimony from the State’s forensic expert witness as to the hallucinatory effect one would have gotten from smoking the marijuana sold by the defendant and examined by the witness. The ruling of the court on the point is shown by the following portion of the transcript of the direct examination of the witness:
“Q. If anyone had, of course, smoked the marijuana that you examined, would they have gotten hallucinating high, as some people call it?
“MR. LANE: Objection, Judge. That’s not material. He’s already testified it was a controlled substance. The substances that make it up are a controlled substance and we just have a sale case here and that’s a violation of the law as it is alleged, a sale.
“THE COURT: Overruled.
“MR. LANE: What effect it’s going to have on somebody has no bearing except to inflame the jury.
“THE COURT: Overruled.
*877 “You may answer.
“A. Yes, sir, it would cause an effect on an individual.”
Appellant cites nine eases in support of his second contention for a reversal. The closest relation that any of such cases have to appellant’s second issue is that they hold that evidence of commission of crimes other than the one for which an accused is being tried is not admissible unless it comes within one of the exceptions to such rule of exclusion. The cases cited are inap-posite to the second issue presented by appellant. In our opinion, the question asked by the prosecuting attorney was flavored in favor of the State and against defendant but any improper flavoring thereof was nullified by the conservative answer of the witness, “Yes, sir, it would cause an effect on an individual.”
III.
The third issue presented by appellant is thus stated in the brief of her counsel:
“It was prejudicial error and injurious to the substantial rights of the defendant to allow the State to testify through its forensic expert that marijuana is a controlled substance and also that T.H.C., one of its components, is a controlled substance when in fact the charge in the case against the defendant was merely sale of marijuana and not possession of T.H.C., or sale of T.H.C. i.e., to allow the testimony of another crime not charged.”
In support of appellant’s third contention, the same nine cases are cited that are cited in support of appellant’s second issue and which are more nearly in point as to appellant’s third issue than they are as to appellant’s second issue.
Appellant’s third issue demonstrates admirable ingenuity and has the semblance at least of a valid contention that the State was allowed to show the commission of a crime in addition to the one for which she was being tried, but it is reasonably clear, we think, that jurors could not have been misled by such testimony to believe that defendant was being prosecuted, or that she could be legally prosecuted, for more than one crime arising out of the sale of the specific prohibited substance, marijuana. The testimony had educational value in its revelation to jurors, who otherwise might not have known it, that “Marihuana” and “Tetrahydrocannabinols” are both hallucinogenic Schedule I controlled substances. This unquestionable scientific and legal idiosyncrasy was perhaps known already by some of the jurors. The defendant could not have been harmed by such testimony. The trial court did not commit error prejudicial to defendant in overruling defendant’s objection to questions calling for such evidence, in overruling defendant’s motions to exclude the evidence or in denying defendant’s motion for a mistrial by reason of the introduction of the evidence.
IV.
By appellant’s final issue, the brief of her attorney challenges the introduction in evidence, over the objection of defendant, of State’s Exhibit 1, which purports to contain the marijuana allegedly sold by defendant, by arguing that there was no proof of the chain of custody between the time and place of the alleged sale and the time and place of its introduction in evidence on the trial. Before State’s Exhibit I was admitted in evidence Investigator Robert Thornton, while working as an undercover agent in Lee County, testified that he purchased from the defendant a “greenish-type material” that appeared to be marijuana, which “was packaged in a small manila envelope,” that he took it with him when he left the residence on his way to his automobile. He further testified:
“... when I got it and got out of the area, I parked where I could write the defendant’s name and everything I knew about the defendant on it, the time of the buy, the address, right here (indicating).
“Q. All right. The writing that appears on the envelope — is that your handwriting?
“A. That’s correct. My initials.

*878 “Q. And then, did you make any more buys between the time you bought from Sonja and the time you say [sic] Officer Brock?
“A. If I recall correctly, no, sir.
“Q. And you did not? All right.
“And that was — that was the only marijuana that you had on you at that time? “A. That’s true.
“Q. And where did you see Officer Brock?
“A. At the F.O.P. Lodge.
“Q. Do you recall what time?
“A. It was about 10:00 o’clock P.M.
“Q. That same night?
“A. Yes, sir.
“Q. And, upon meeting Officer Brock, what did you do?
“A. I then handed this over to him and I filled out ....

“Q. Okay. When you turned the envelope over to Officer Brock was it in the same condition as it was when you received it from the defendant, the envelope and the contents thereof?
“A. Yes, sir, it was.”
Officer Brock testified in pertinent part as follows:
“A. I met with Thornton at the F.O.P. Lodge in Opelika at approximately 10:00 P.M. that night, for him to turn evidence, drug evidence, over to me which he had purchased.
“Q. Let me show you this envelope here and ask if you can identify that envelope?
“A. Yes, sir. This is the marijuana in the envelope that he turned over to me that night.
“Q. All right. Upon receiving that envelope and the contents thereof, what did you do with it?
“A. I took it to the Opelika Police Department, sealed it in this envelope (indicating), and put it in our evidence locker.
“Q. All right. Let me show you this larger envelope and ask you if the initials on here, ‘R.C.B.,’ are those your initials?
“A. Yes, sir.
“Q. Did you place those on there?
“A. Yes, sir.”
Officer Brock further testified that he then placed the small envelope in the larger envelope, sealed the larger envelope and initialed it and “placed the envelopes and contents therein in the drug evidence locker in the Opelika Police Department” and that they were “in the same condition then as they were when” he “received them from Detective Thornton.”
Officer Seroyer of the Opelika Police Department testified that on April 15, 1983, he saw the “large envelope when it was sealed with tape and had the initials ‘R.C.B.’ thereon in the evidence locker at the Opelika Police Department,” and delivered it to Mr. Tellis Hudson, an employee of the Department of Forensic Science. During the testimony of the expert witness who analyzed the substance, he said that he received State’s Exhibit 1 on April 15, 1983, “from Tellis D. Hudson, a criminalist with the Alabama Department of Forensic Sciences of Auburn.”
There was abundant proof of the chain of custody of the contents of State’s Exhibit I. Appellant’s final contention for a reversal is not well taken.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.