HARRIS, Presiding Judge.
Appellant was convicted of the offense of assault with intent to rob and the Court sentenced him to twenty years imprisonment in the penitentiary. Prior to trial appellant filed a written waiver of arraignment wherein he pleaded not guilty and not guilty by reason of insanity. After sentence was imposed he gave notice of appeal in open court. He was furnished a free transcript and trial counsel was appointed to represent him on appeal.
The facts presented by the State are not in dispute. Appellant did not testify nor did he offer any evidence in his behalf. It took the jury only twelve minutes to return a verdict finding appellant guilty as charged in the indictment.
Dink Hamilton testified that on December 19, 1976 he was employed as manager of the Raceway Station on the Mobile Highway near the intersection of the Southern By-Pass and the Mobile Highway. He stated that he opened the station about 7:00 a. *329 m. on December 19, 1976, and a few minutes later someone knocked on the office door. He opened the door and saw a man standing there with a pistol in his hand. This man was wearing a wig and fake beard and stuck the pistol in his stomach and told him to get back inside and he wouldn’t get hurt.
Hamilton stated that he grabbed the pistol and wrestled with the man for a minute or two. Hamilton pushed the man back and ran to a nearby building and told the attendant that he was being robbed and asked him for a pistol. He then saw the man run to a 1967 yellow Ford which was parked in front of the station in which another man was behind the steering wheel. This other man was wearing glasses, a wig and a fake beard. As the yellow Ford drove across the parking lot Hamilton fired his pistol at the fleeing car but did not hit it. The fleeing car went south on Highway 31. Almost instantly a State Trooper pulled into the station and Hamilton got in the Trooper’s car and they went in hot pursuit of the yellow Ford.
Hamilton further testified they followed the fleeing Ford down Highway 31 to a Pak-A-Sak Store near the English Village where he observed the two men jump from the car and run into some woods as the moving car ran into a ditch. He identified several photographs of the yellow Ford in which his assailant made his escape. Hamilton stated that the Ford had two rear license tags on it.
On cross-examination Hamilton stated that appellant was not the man who held the gun on him at the station but was the driver of the getaway car.
Anderson Dixon, an inmate at Draper Prison, testified that in December 1976 he was working on the dog patrol and had been on this assignment for thirteen months. He described the tracking hounds as a mixed breed black and tan dog and a full blooded hound. He stated that he had used these dogs to track people well over 100 times.
Dixon stated that on December 19, 1976 around 9:30 a. m., he had occasion to use these tracking dogs off Highway 31 near a Pak-A-Sak store in Montgomery County. He said the dogs picked up a scent and ran through a swamp area near Catoma Creek until they came upon a man seated under a cedar tree whom he identified as appellant. He said his tracking partner was in front of him and reached appellant before he got there. When he got to appellant he heard him say, “Mens, I don’t think hard of y’all for catching me., I know y’all and everything. I just got caught.” Dixon said that appellant’s pants legs were muddy and wet just like his from going through the swampy area between where the yellow car was ditched and where they discovered appellant.
Dixon further testified that when they reached appellant he appeared to be tired from running and “he was blowing.” He further stated that his tracking partner put handcuffs on appellant.
From the record:
“And I think Jesse handcuffed him too tight and had to loosen off on ’em. Right Joe?
“The Defendant: I don’t know.”
Police Officer Fred Thomas Brock testified he investigated the attempted robbery on December 19, 1976 and after receiving a radio dispatch he proceeded to the store near the English Village where he saw a yellow Ford in a ditch. He identified State’s Exhibit 6 as the photograph of the car in the ditch. He stated that he protected the car at the scene and upon impounding the car at the City lot, he noted the identification number of the car on the impound form. He said he obtained a certified copy of the 1977 car tag receipt issued to Laura Hudson for this vehicle and that the receipt showed the same vehicle identification number that he recorded at the time he impounded the car. He also stated there were two license tags — 1976 and 1977 —on this yellow Ford and they were both issued to Laura Hudson. Laura Hudson was identified as the wife of the appellant.
Thomas Ray Shanks, an evidence technician with the Montgomery Police Depart *330 ment, identified State’s Exhibit 1 as the blue and white striped shirt which appellant removed in his presence at the Department on December 19, 1976. He also identified State’s Exhibit 2 as a wig and beard found about 30 feet to the rear of the wrecked yellow Ford, and he identified State’s Exhibit 3 as a yellow cap found in the rear seat of the impounded yellow Ford. He personally delivered these Exhibits to the Toxicologist at the Montgomery Laboratory-
Police Officer Robert L. Ingram testified that he had known appellant for about twelve years. He participated in the reported assault to rob the Raceway Service Station on December 19, 1976. He stated when he arrived on the scene of the wrecked yellow Ford he immediately recognized the car as one he had seen appellant driving on several prior occasions. He also identified the yellow cap, State’s Exhibit 3, as being similar to the one he had seen appellant wearing on several occasions.
Mr. Thomas Hopen who was employed by the Department of Toxicology, and whose qualifications as an expert were admitted by the defense, testified that some material taken from the shirt owned and worn by appellant was similar to the material found in a wig and beard near the wrecked Ford saying, “They were similar in all physical characteristics and could have a common origin with the hairs from the wig.”
Appellant’s conviction rested, in part, on circumstantial evidence. Circumstantial evidence is as good as direct evidence so long as it points to the guilt of the accused. As we view the record this is one of the strongest cases of circumstantial evidence tending to show the guilt of the accused that has reached this Court in some time. Chafin v. State, Ala.Cr.App., 333 So.2d 599.
The law is well settled that when, by prearrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. The community of purpose need not be proved by positive testimony: The jury is to determine whether it exists, and the extent of it, from the conduct of the parties and all the evidence in the case. Stokley v. State, 254 Ala. 534, 49 So.2d 284; Bass v. State, 55 Ala.App. 5, 312 So.2d 576.
The participation in a crime and the community of purpose of the perpetrators need not be proved by direct or positive testimony, but may be inferred from circumstantial evidence. Parsons v. State, 33 Ala.App. 309, 33 So.2d 164.
There was more than ample circumstantial evidence that appellant was guilty as charged. The State does not claim that appellant was the man who stuck the pistol in the stomach of the manager of the Raceway Service Station, but the State contends that appellant was the driver of the getaway car. This was a “hot pursuit” case. The victim of the attempted robbery and a State Trooper followed the fleeing yellow Ford until they saw the two men jump out of the moving car and run into a wooded area. Shortly thereafter trackers with trained dogs followed the trail of the fleeing men and came upon appellant sitting under a cedar tree. Before anyone said anything to appellant he spoke up and said, “Mens, I don’t think hard of y’all catching me. I know y’all and everything. I just got caught.”
The State’s evidence further showed that the yellow Ford in which the men fled the scene of the attempted robbery belonged to appellant’s wife and he had been seen by a police officer driving this same car for several weeks before the date of the crime. In addition to this there was expert testimony that fibers from the wig and fake beard were similar to those found on the shirt appellant was wearing when apprehended. The yellow cap found in the car driven by appellant was traced directly to him by a police officer who had known appellant for twelve years.
*331 There was no error in overruling appellant’s motion to exclude the State’s evidence. Young v. State, 283 Ala. 676, 220 So.2d 843; Bridges v. State, 56 Ala.App. 411, 321 So.2d 749.
A careful examination of the entire record reveals no reversible error and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.