Appellants, Jack Tice and Donny Ray Sullivan, were separately indicted for the offense of robbery in the first degree. The indictments were consolidated for trial pursuant to A.R.Crim.P.Temp. 15.4 (b). A jury found both defendants guilty as charged. Sullivan was sentenced to fifteen years' *Page 275 
imprisonment while Tice was sentenced to life imprisonment as an habitual offender.
The indictments arose out of the March 7, 1982, robbery of the Montgomery Civic Center in which coins valued at more than three-and-a-half million dollars were stolen. After midnight on March 7, two men gained entry into the civic center on the pretext of delivering a package to several collectors of the coin show. After the package was put down, one of the men grabbed the maintenance engineer and pointed a gun at him while the other robber twisted a gun away from the security guard. The intruders ordered the two civic center employees to lie on the floor and then they taped the men's eyes and legs. Additionally, the security guard was bound with handcuffs and his mouth was covered with tape. One of the robbers put a knife to the maintenance engineer's throat and told him that if they made any noise, he would cut their throats. Then one of the intruders said, "Go let the others in."
Two hours later, the maintenance engineer was able to free himself and he called the police. The area where the coins had been displayed was ransacked; most of the display was gone. At trial, both witnesses identified the intruder with the gun as Donny Sullivan.
On the evening of March 8, the Dothan Police Department received an FBI alert to be on the lookout for a JarPool rental truck and a Hertz rental truck. The JarPool truck had been rented in Dothan earlier that day by Donny Sullivan who had been accompanied by two unidentified persons, a woman and a man. The Hertz truck and a hand truck had been rented in Montgomery on the afternoon of March 6 by Jack Tice who had been accompanied by Sherman Casey.
After receiving this information, several officers proceeded to Sullivan's residence at Barstone Apartments and set up surveillance at approximately 11 p.m. The officers observed Sullivan's parked vehicle. They also saw a car bearing a Montgomery County tag enter the parking lot and an individual from the car proceed toward the apartments. This car was later discovered to be registered to Tice. After making these observations, the officers entered the Omelete Shoppe parking lot which is in the vicinity of the apartments and there they observed a JarPool truck and a Hertz truck. After verifying the trucks' numbers and tags, Officer Kenny entered the restaurant and saw Tice, Casey, and Casey's wife. Several minutes later, these three persons along with a fourth individual left the restaurant and got into the two trucks. One person got into the Hertz truck and after he drove the truck out of the parking lot onto the highway, an individual from the JarPool truck got into the Hertz truck. The police attempted to stop the Hertz truck, but it left the parking lot at a high rate of speed and its driver made several attempts to run the pursuing officers off the highway. The driver did not stop the truck until, after trying to shoot out the truck's tires, an officer pointed his weapon at the driver. After the truck was stopped, Casey emerged from the passenger's side and Tice exited from the driver's side.
In the meantime, an officer observed Sullivan and a woman run from the JarPool truck. Cindy Casey was apprehended in the parking lot and Sullivan was apprehended two hours later.
The morning after these arrests, the JarPool truck was searched pursuant to a warrant. The search revealed boxes containing silver, coins, and other similar items which were identified as the property taken from the civic center. In addition, a Montgomery investigator noted that the tread pattern of the rear tires of the Hertz truck appeared to have the same tread pattern as the wet tire print photographed at the civic center hours after the robbery.
Both defendants presented an alibi for the night of the robbery. Tice testified that he rented the Hertz truck for Casey because Casey had told him that he needed the truck to move, but he could not rent it because his driver's license had been suspended. He explained his presence in Dothan by testifying that he had driven Casey's *Page 276 
wife there on Sunday night in his car at her request and that he was to take the truck back to Montgomery.
Sullivan testified that he rented the JarPool truck for Casey because he was also told that Casey needed it to move. He denied being at the Omelet Shoppe and fleeing from the police.
On behalf of Tice and Sullivan, Casey testified that neither Tice nor Sullivan knew of the robbery and that he alone switched the stolen coins from the Hertz truck to the JarPool truck.
 I
Sullivan contends that, because he was indicted before the effective date of A.R.Crim.P.Temp. 15.4 (b), which provides for consolidation of separately indicted defendants for trial, he had the right to elect to be tried separately in accordance with § 15-14-20, Code of Alabama 1975. Section 15-14-20
afforded a separate trial as a matter of right to any defendant jointly indicted with one or more other defendants if he elected in proper time. See Brooks v. City of Birmingham,401 So.2d 299 (Ala.Crim.App. 1981). Sullivan argues that retroactive application of the rule allowing consolidation of defendants is prohibited by the ex post facto clauses of the constitutions of Alabama and the United States.
Initially, we note that the rule applicable to the issue of the separate indictment of two defendants for the same offense and the right of a separate jury trial is expressed in Helumsv. State, 23 Ala. App. 401, 126 So. 183 (1930): "Being separately indicted, the defendant is entitled to a separate trial, and a joint trial with another without the consent of the defendant or a waiver of the right by him appearing of record is error and cause for reversal. Martin v. State,19 Ala. App. 432, 97 So. 768." However, regardless of what law was applicable at the time the offense was committed and at the time Sullivan and Tice were indicted, we find that the application of A.R.Crim.P.Temp. 15.4 (b), was not prohibited as being an ex post facto law.
Support for our conclusion is found in Beazell v. Ohio,269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925). There, the law in effect at the time of the offense provided jointly indicted defendants with separate trials upon their application. Ohio General Code § 13,677. However, prior to indictment and trial of the jointly indicted defendants, this statute was amended (110 Ohio Laws, p. 301) to provide for a consolidated trial unless the trial court, in its discretion, granted a motion to sever. In reaching the holding that the application of this amendment to pending prosecutions for offenses previously committed was not invalid as ex post facto, the Court reasoned:
 "[T]he statute of Ohio here drawn in question affects only the manner in which the trial of those jointly accused shall be conducted. It does not deprive the plaintiffs in error of any defense previously available, nor affect the criminal quality of the act charged. Nor does it change the legal definition of the offense or the punishment to be meted out. The quantum and kind of proof required to establish guilt, and all questions which may be considered by the court and jury in determining guilt or innocence, remain the same. . . . [I]t is now well settled that statutory changes in the mode of trial or the rules of evidence, which do not deprive the accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited. . . . [T]he constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation . . . and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance . . . (citations omitted.) Beazell, 269 U.S. at 170-171 [46 S.Ct. at 68-69]."
In following the considerations enumerated by the Supreme Court, we observe that A.R.Crim.P.Temp. 15.4 (b), merely changes the mode of trial. This court has already held, in a comprehensive and well-reasoned opinion by Presiding Judge Bowen, that the consolidation for trial of separate *Page 277 
indictments against separate defendants is a matter of procedure and does not abridge the substantial right of an accused to a jury trial. Holsemback v. State, 443 So.2d 1371,1374-1377 (Ala.Cr.App. 1983). See also Haynes v. State,424 So.2d 669 (Ala.Cr.App. 1982), cert. denied, 425 So.2d 1367 (1983). Hence, we find that A.R.Crim.P.Temp. 15.4 (b) does not operate as an ex post facto law in prosecutions for offenses committed before the effective date of this rule.
 II
In his final issue, Sullivan argues that the trial court erred in refusing to give his requested written jury instructions on identification; however, at trial, after the court's charge, Sullivan announced, "Satisfied," and the jury began its deliberation. Sullivan failed to comply with A.R.Crim.P.Temp. 14, which requires an objection before the jury retires, stating the matter objected to and supporting grounds. This failure precludes our review of this issue.
 III
Tice contends that Officer Smith was erroneously allowed to testify to the comparison between the wet tire print photographed inside the civic center and the tire tread on the Hertz truck rented and driven by Tice; he contends that the following testimony is opinion evidence, but that the officer was not qualified as an expert to make this comparison:
 "Q Did you have occasion to examine the tires on one of the vehicles?
 "MR. ISSAC: I object. This witness has not been qualified as an expert.
"THE COURT: Overrule your objection.
". . . .
 "A Yes, sir, I visually observed all of the tires there.
 "Q Did you find a pattern that generally matched on any of those vehicles . . . [t]he pattern that you witnessed and that you took the picture of down behind the Civic Center?
"A Yes, sir, that's correct.
 "Q Which one in your judgment would that have been, please?
 "A The rear tires on the Hertz truck, the large yellow truck, appeared to have the same tread pattern as the one that I photographed inside the Civic Center.
 "Q Of course, you're not telling us it's exactly the same tire, just the same type tire in your judgment?
"A Yes, sir.
 "MR. ADAMS: Your Honor, we would object and move to exclude as to what he is telling us. That's interpretation for the jury to make and not his interpretation.
 "THE COURT: All right, rephrase your question, please sir.
 "Q Would you tell us, please sir, what your conclusion was, based on the visual comparisons you made.
 "A Yes, sir. The tire tread that I photographed inside the Civic Center was of a mudgrip design — when I say mudgrip, I mean a large lug pattern; not a highway tread. It was very distinct and shart [sic] in its edges, which indicated a new type tire. It did not have a lot of road miles. It appeared to be a fairly new tire. The lugs have a certain pattern. Each manufacturer has a different pattern or width of lug. As close as I could determine, the one that I saw on the Hertz truck, the yellow one, was of the same pattern, the same width, and the same general tread design."
No further objection was entered by Tice.
Although Officer Smith was not qualified as an expert in tire track analysis, his testimony was admissible. No special training or expertise is required of a witness to identify the tread of tires and the tracks they leave. State v. Scott,221 La. 643, 650, 60 So.2d 71, 74 (1952); Claud v. Commonwealth,217 Va. 794, 232 S.E.2d 790, 792 (1977).
 "Any person is able to make a comparison of tires and tire imprints on viewing them, and to describe what he saw, or to state whether or not a tire with a certain type of tread would make an imprint similar to one appearing in evidence by *Page 278 
means of casts or photographs. This is a statement of fact, not of opinion. In any event, it is a matter readily ascertainable by any person with ordinary powers of observation and is not necessarily a subject requiring expert testimony."
State v. Schumacher, 184 Neb. 653, 171 N.W.2d 181, 183 (1969). The tire prints and treads are large and the points of similarity are obvious (contrasted with fingerprints or palm prints). For these reasons, we hold that the comparison may be made a subject of nonexpert testimony. See also Holmes v.State, 257 Ark. 871, 520 S.W.2d 715 (1975).
Furthermore, the admission of Officer Smith's testimony was not violative of the traditional rule in Alabama that a lay witness can testify to facts which he observed but cannot testify to opinions, conclusions, deductions, or inferences which are based upon facts. See C. Gamble, McElroy's AlabamaEvidence, § 127.01 (1) (3d ed. 1977). Although the opinion evidence rule is "a fruitful producer of irreconcilable decisions," Daniell v. State, 37 Ala. App. 559, 73 So.2d 370, cert. denied, 261 Ala. 145, 73 So.2d 375 (1954),[1] we think that the general rule to be gleaned from these authorities is as follows: a witness will not be permitted to state his belief, opinion, or conclusion that certain tracks were made by the accused's motor vehicle, but he may state facts within his personal observation, such as a comparison of different tracks. 23 C.J.S. Criminal Law § 876 (a) (1961).
For example, a witness may state that two sets of tracks correspond in peculiarities, since such observation is a statement of collective facts. Blackmon v. State, 246 Ala. 675,22 So.2d 29 (1945) (where the witness was permitted to testify that two sets of tire prints appeared to be the same); Pope v.State, 174 Ala. 63, 57 So. 245 (1911) (where witness was allowed to state that a particular mule would make a track similar to the tracks found); Young Griffin v. State, 68 Ala. 569
(1881) (where the witness stated the fact of correspondence of shoes to tracks); Clark v. State, 54 Ala. App. 217,307 So.2d 28 (1975) (where the witness stated that boots were consistent with bootprints); Cunningham v. State, 14 Ala. App. 1,69 So. 982 (1915) (where the witness was permitted to testify that two sets of footprints were about the same in peculiarities and "looked exactly alike").
 "A witness may testify to his opinion if it is a collective fact or a shorthand rendition of fact. This variety is most commonly referred to as the collective fact exception [to the opinion evidence rule] and arises when the facts observed by the witness are so many or so inexpressible that he is allowed to give the jury his opinion. His opinion is conceived of as being a shorthand way of giving the facts and, consequently, does not constitute a violation of the opinion evidence rule." C. Gamble, McElroy's Alabama Evidence § 127.01 (3) Variety No. 7 (3d ed. 1977).
The spirit of the rule is not violated by the shorthand statement of similarity when it is made by a witness who states the marked peculiarities and is subject to cross-examination by the defendant. Pope v. State, 57 So. at 250. But see Livingstonv. State, 105 Ala. 127, 16 So. 801 (1895) (wherein the court ruled that a witness could not state that particular tracks "corresponded" with the defendant's tracks).
However, a witness should not be allowed to testify that the defendant's tire would make such a track or that, in his judgment, it was the defendant's tire track, since these are expressions of mere opinion. Terry v. State, 118 Ala. 79,23 So. 776 (1898); Hodge v. Alabama, 97 Ala. 37, 12 So. 164
(1893); Riley v. State, 88 Ala. 193, 7 So. 149 (1890); Busby v.State, 77 Ala. 66 (1884). The determination of the identity of the track is a fact for the jury to determine. Pope v. State, supra; Hodge v. State, supra. *Page 279 
In the instant case, Officer Smith's testimony was limited solely to his direct observation. He stated facts and peculiarities of correspondence and it was for the jury to find whether the tires on the truck rented and driven by Tice when he was apprehended made the print discovered at the scene shortly after the robbery. See Cunningham v. State, supra. The witness himself repeatedly made it clear on cross-examination that he could not specifically say the print had been made by the Hertz truck rented by Tice, but he could only state that they had the same peculiarities. His assertion that the print and tire matched in peculiarities was a statement of collective fact derived from his personal observation. We find no error in the admission of this testimony.
 IV
Tice further claims that his conviction rests upon insufficient evidence because the prosecution presented no evidence that he was one of the two robbers seen by witnesses in the civic center or that he was an accomplice. The participation in a crime and the community of purpose of the perpetrators need not be proved by direct or positive testimony, but may be inferred from circumstantial evidence.Hudson v. State, 354 So.2d 328 (Ala.Cr.App. 1978). It is a fundamental principle that circumstantial evidence is entitled to the same weight as direct evidence. Andrews v. State,437 So.2d 661 (Ala.Cr.App. 1983). A person's presence and his conduct before, during, and after the crime, are "potent circumstances from which participation may be inferred."Sanders v. State, 423 So.2d 348 (Ala.Cr.App. 1982). A review of the facts set out above leads us to the conclusion that the trial court properly submitted the case to the jury and the jury's verdict of guilty is supported by more than ample circumstantial evidence.
 V
In Tice's final issue, he contends, as Sullivan does, that the trial court erred in not giving certain requested written jury charges; however, Tice, like Sullivan, announced "Satisfied" after the court's oral charge. Since Tice made no objection to the refusal to give the requested charges, error or omission is waived for purposes of appeal. See Parham v.City of Opelika, 412 So.2d 1268 (Ala.Cr.App. 1982).
For the reasons herein stated, this cause is due to be affirmed.
AFFIRMED.
BOWEN, TYSON and HARRIS, JJ., concur.
TAYLOR, J., recuses.
[1] See also Boatwright v. State, 351 So.2d 1366 (Ala. 1977);Pope v. State, 174 Ala. 63, 57 So. 245 (1911).