Thomas Cleve Hines was charged with the theft of a tractor and Bushhog attachment, convicted of theft in the first degree, and sentenced to 20 years' imprisonment. His appeal covers a spectrum of issues.
 I
Hines contends first that there was insufficient evidence upon which to convict him and that for that reason he was denied due process of law. We here present a reasonably concise summary of the facts.
The victim, Riley Dawson, is a farmer in Monroe County Alabama. He testified that on August 23, 1983, he had mowed all day, using his Ford 4000 tractor and a Bushhog attachment, and that he put them in a hay shed for the night. The next morning when he returned, the tractor and Bushhog were gone, the fence was cut at the barn, and the tracks could be followed showing that the tractor went through the main fence to the road, and that another vehicle had backed into the bank of dirt at the road. He testified that the tractor was worth $4,000 and that he had paid $1,300 for the Bushhog and the price had gone up $200 more.
There was then testimony elicited from people who had observed a van-type truck at the point where the tractor disappeared. David Tucker testified that about 9:30 that night he saw a white Ford truck with a "Dixie Leasing" sign on the side parked at some nearby "dumpsters" (trash containers). He saw a black man by the truck. Deputy sheriff Percy Nero testified that at about 9:00 that night he and John Farrow saw a truck parked at a "dumpster" about a quarter mile from Dawson's hay shed.
Then the rental manager of the Dixie Leasing Company in Mobile took the stand. Introduced into evidence was a rental agreement with Thomas Cleve Hines for a 20-foot van body truck. The manager described the vehicle as having a white body with a blue strip on the cab and the words "Dixie Leasing" hand lettered on the van part of the body. He testified that the vehicle was turned back in on Monday, the 24th, but with damage. The roof and the front portion of the van body had been damaged, and appeared to have had an impact with a tree. Dixie Leasing sent the truck to Gulf City Body and Trailer Works for repairs. They noted that the mileage on the odometer was 235 miles.
Investigator Steve Griffis, of the Monroe County Sheriff's Department, testified that he took the initial report from the two deputies and that he and Investigator Ikner went to the scene where the tractor was believed to have been stolen. From the tracks it appeared that someone had tried to load the tractor onto another vehicle. The other tracks were of a dual wheeled vehicle, and there was evidence that the bumper of the dual wheeled vehicle had run into the dirt bank and left the imprint of the bumper; in addition, some trees had been scraped and skinned. The bumper mark was measured and some soil samples from the dirt bank were taken. These soil samples were turned over to Investigator Ikner. Investigator Ikner described the truck as possibly having a slick tire on one side. He testified that the vehicle at Dixie Leasing had a tire that was slick. He testified that the tracks and the tire were similar and that the bumper was identical in size. He testified that he took a dirt sample from the bumper of the truck and one from the inside of the back part of the truck. These samples, he turned over to a deputy who took them to the Department of Forensic Sciences. All of the soil samples were turned over to Mr. Sadhue of the Department of Forensic Sciences.
Jessie Pryer, a co-defendant, made a statement to Sheriff Sager of Monroe County, on August 26, 1983. Co-defendant Pryer's statement was to the effect that Hines had asked Pryer to come to Monroe County with him to pick up a car. He said that they did pick up a car and that he knew nothing about the theft of a tractor. He did say that they were the people, and that it was their truck, observed at the "dumpster" on the road near where the tractor was taken. Thereafter, he and Sager went on the route that the appellant and *Page 973 
Pryer had taken on the day of the theft. Pryer took him to where they rented the truck as well as the rest of the trip. The total mileage logged was 245 miles.
Then Investigator Ikner testified that he was an investigator for the district attorney's office in August 1983. He said that he had had a conversation with Thomas Cleve Hines and advised him of his rights. Hines signed an acknowledgement of having been advised of his rights and a waiver form, and made a statement.
He said that he rented the truck on the 24th and had driven to Vredenburgh, Alabama, with Mr. Pryer and that they pulled a car back to Mobile.
A criminalist from the Department of Forensic Sciences testified as to the identity of the soil samples from the truck and from the dirt bank from which the tractor was loaded onto the truck. Deputy Griffis, Investigator Ikner, and Mr. Sadhue all testified to the chain of custody of the soil samples.
Then a witness was called by the state with regard to an encounter with the defendant about 10 months before trial. Willie Johnson said that Hines and Pryer approached him at Moore's store and told him they needed a white person to testify in their behalf in Monroeville. They wanted him to say that he had seen them on a certain day back in 1983 at a "dumpster" on Highway 21 pulling an automobile behind an 18-foot van truck, and promised to pay him for his time and expenses. No witnesses were called on behalf of appellant.
The foregoing recitation of facts presents sufficient evidence from which the jury might well have been convinced beyond a reasonable doubt of the guilt of this appellant.Williams v. State, 335 So.2d 249 (Ala.Cr.App. 1976); Lofton v.State, 371 So.2d 988 (Ala.Cr.App. 1979).
 II
Appellant contends that at the time of his arrest, there was insufficient probable cause for the authorities to arrest him. At that time, the authorities had knowledge of the Dixie leasing van having been observed close to the scene on the night of the crime. The damage to the truck approximately corrolated to the damage to the trees, and they knew the appellant was the person who rented the van from Dixie Leasing in Mobile. This data constituted sufficient probable cause to arrest the appellant; his statements made shortly after his arrest were properly admissible. Draper v. United States,358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).
 III
Appellant next contends that the soil samples taken from the scene of the transfer of the tractor to the truck and from the truck itself should not have been received into evidence because, he argues, there was a break in the chain of custody. The evidence reveals no break in the chain after the samples got into the hands of the authorities. Appellant seems to contend that the truck, when returned to Mobile and sent to the body works for repairs, might have picked up dirt from another dirt bank. This is not a chain-of-custody issue. This argument goes to the weight of the evidence, however, and was a jury issue. No error was committed in receiving this testimony into evidence.
 IV
Appellant next contends that the mileage figures of the truck as compared with the Sheriff's car should not have been received into evidence because the odometers might have been faulty. The objection here goes to the weight of the evidence. The distance to and from Dixie Rental in Mobile to the dirt bank on Highway 21 near Dawson's barn in Monroe County, when compared to the mileage on the rental vehicle, would certainly be material, relevant, and competent evidence.
 V
Appellant contends that the state violated § 15-14-20, Code of Alabama *Page 974 
1975, when it caused Hines to be tried together with his co-defendant. Appellant is correct that before the effective date of the Alabama Temporary Rules of Criminal Procedure, this section afforded a separate trial as a matter of right to any defendant jointly indicted, if he elected in the proper time.Tice v. State, 460 So.2d 273 (Ala.Cr.App. 1984). Since the enactment of Rule 15.4, Alabama Temporary Rules of Criminal Procedure, the law is:
 "(a) Joinder. Two or more defendants may be charged in the same indictment, information, or complaint:
 "(i) if they are alleged to have participated in the same act or transaction; or
 "(ii) when the several offenses are a part of a common conspiracy, scheme, or plan; or
 "(iii) when the several offenses are otherwise so closely connected that it would be difficult to separate the proof of one from the proof of the other."
The new Judicial Article to the Alabama Constitution, Amendment No. 328, § 6.11, Constitution of Alabama of 1901, provides that:
 "The Supreme Court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts. . . ."
The constitutional provision supersedes the older code section.
 VI
Appellant next contends the court erred in sentencing him as a habitual offender, contending that the prior convictions did not affirmatively show a compliance with Boykin v. Alabama,395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and Ireland v.State, 47 Ala. App. 65, 250 So.2d 602 (Ala.Cr.App. 1971).
It is not the duty of a sentencing court to inquire into whether a prior conviction did or did not comply with Boykin
and Ireland. It is only required that it affirmatively appear that the accused was represented by counsel in those cases resulting in the prior convictions. A felony sentencing hearing is not the time to collaterally attack the validity of a prior conviction. Jones v. State, 431 So.2d 1367 (Ala.Cr.App. 1983).
 VII
Appellant contends that the court erred in failing to give his charge regarding circumstantial evidence and reasonable doubt. The reasonable doubt and circumstantial evidence part of the court's oral charge appears to have substantially and fairly covered the law on these subjects. Consequently, it was not error to deny his requested charge on those subjects.
 VIII
The appellant contends that the use of the state's peremptory strikes to remove black people from the jury is conclusive evidence of a plan for the systematic exclusion of blacks. This has been held not to be true in many cases. Swain v. Alabama,380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), bars a Fourteenth Amendment analysis of the issue when the challenge covers only a particular case. It is presumed that no fault exists in the system used for the selection of juries in the absence of proof or an offer of proof to the contrary. Nixon v.State, 291 Ala. 657, 286 So.2d 315 (1973). While we recognize that this is a lively issue in constitutional law circles, we consider the present rule to be the correct one. The adversary system dictates that counsel for each side will seek to exclude jurors expected to be least favorable to the striking party and the most sympathetic to the other side. Each time counsel has an opportunity to exercise a peremptory strike, he must call on all his knowledge and experience to decide which remaining veniremen would probably be least sympathetic to his side of the case. To strike a favorable jury is part of the duty of an advocate, and does not of itself present any proof of unlawful racial discrimination.
To place fetters on either advocate's exercise of judgment would endanger the *Page 975 
right of his client to effective assistance of counsel. This case is due to be affirmed.
AFFIRMED.
All the Judges concur.